1

2

3

4

5

6                 **UNITED STATES DISTRICT COURT**

7                    **EASTERN DISTRICT OF CALIFORNIA**

8

9   AMUR EQUIPMENT FINANCE, INC. f/k/a        Case No.  1:17-cv-00416-AWI-SKO
    AXIS CAPITAL, INC.,
10                                            **FINDINGS AND RECOMMENDATIONS**
                    Plaintiff,                **THAT THE COURT DENY PLAINTIFF'S**
11                                            **WRIT OF POSSESSION AS MOOT AND**
            v.                                **GRANT IN PART AND DENY IN PART**
12                                            **PLAINTIFF'S RENEWED MOTION FOR**
    CHD TRANSPORT INC. d/b/a SINGH            **DEFAULT JUDGMENT**
    TRANSPORTATION and BALVINDER
13  SINGH,                                    **OBJECTION PERIOD: 21 DAYS**

14                  Defendants.               **(Doc. 22)**

15

16   _____/

17

18

19          Before the Court are Plaintiff AMUR Equipment Finance, Inc. f/k/a Axis Capital, Inc.'s

20   Plaintiff's Application for Writ of Possession (Doc. 4) and Plaintiff's Renewed Motion for Default

21   Judgment (Doc. 22).   For the reasons provided herein, the undersigned recommends that the

22   presiding district court judge DENY Plaintiff's Application for Writ of Possession as MOOT, and

23   GRANT IN PART and DENY IN PART Plaintiff's Renewed Motion for Default Judgment.

24                        **I.      BACKGROUND**

25          Plaintiff alleges Defendant CHD Transport Inc. d/b/a Singh Transportation ("CHD") and

26   Defendant Balvinder Singh ("Singh") (collectively "Defendants") breached certain equipment

27   finance agreements and related personal guaranties.   Plaintiff "is a Nebraska corporation with its

28   principal place of business located  . . . [in] Nebraska."  (Doc. 1 ("Compl.") ¶ 1.)  CHD "is, upon

information and belief, a California corporation with its principal place of business in Fresno, California." (*Id.* ¶ 2.) Singh is "upon information and belief, a California resident residing . . . [in] Fresno, California." (*Id.* ¶ 3.)

**A.    Background Facts and the Parties' Agreements**

      **1.    The 930282 Finance Agreement and Guaranty**

On August 24, 2015, Plaintiff and CHD entered into an "Equipment Finance Agreement," referred to as "Agreement No. 930282" (the "930282 Finance Agreement"), pursuant to which (a) Plaintiff lent funds to CHD, and CHD agreed to repay such lent funds, in accordance with the terms of the 930282 Finance Agreement, and (b) CHD granted Plaintiff a first priority security interest in the equipment purchased with the funds Plaintiff lent pursuant to the 930282 Finance Agreement (collectively, the "930282 Financed Equipment"). (Compl. ¶ 6, Ex. A.) Pursuant to the terms of the 930282 Finance Agreement, CHD is required to make monthly payments to Plaintiff for forty-nine (49) months as follows: (a) one payment in the amount of $7,399.70 for the first month; and (b) payments in the amount of $1,712.52 per month for forty-eight (48) months. (*Id.* ¶ 7, Ex. A.) "In order to induce [Plaintiff] to enter into the 930282 Finance Agreement," Singh executed and delivered to Plaintiff a written personal guaranty (the "930282 Singh Guaranty") agreeing to "unconditionally guarantee . . . the payment and performance . . . of all of the obligations" owed to Plaintiff by CHD under the 930282 Finance Agreement. (*Id.* ¶ 10, Ex. A.) Plaintiff "accepted the 930282 Singh Guaranty, relied upon the same and, in consideration for the 930282 Singh Guaranty, entered into the 930282 Finance Agreement with CHD." (*Id.* ¶ 11.)

CHD "defaulted in its obligations under the 930282 Finance Agreement by . . . failing to pay the amounts due and owing thereunder when those amounts became due." (*Id.* ¶ 12.) As a result of CHD's defaults, and in accordance with the 930282 Finance Agreement, Plaintiff "exercised its right to accelerate and declare immediately due and payable all amounts due under the 930282 Finance Agreement." (*Id.* ¶ 13. *See also id.* Ex. A.) Plaintiff "demanded that CHD pay all amounts due to [Plaintiff] under the 930282 Finance Agreement," yet, despite Plaintiff's "repeated demands," CHD has failed to pay the amounts demanded by Plaintiff and due under the 930282 Finance Agreement. (*Id.* ¶¶ 14–15.) CHD has "further failed to turn over the 930282

Financed Equipment" to Plaintiff. (*Id.* ¶ 15.) Under the 930282 Finance Agreement, CHD is obligated to pay attorney's fees and costs incurred by Plaintiff in enforcing the 930282 Finance Agreement. (*Id.* ¶ 17. *See also id.* Ex. A.)

Upon CHD's default under the 930282 Finance Agreement, the 930282 Singh Guaranty "allows [Plaintiff] to proceed against Singh for the amounts due under the 930282 Finance Agreement." (*Id.* ¶ 20. *See also id.* Ex. A.) Plaintiff "demanded that Singh pay all amounts due to [Plaintiff] under the 930282 Finance Agreement and the 930282 Singh Guaranty," yet, despite Plaintiff's demands, Singh has failed to pay the amounts due and owing to Plaintiff under the 930282 Finance Agreement and the 930282 Singh Guaranty. (*Id.* ¶¶ 21–22.)

### 2. The 931428 Finance Agreement and Guaranty

On December 31, 2015, Plaintiff and CHD entered into another "Equipment Finance Agreement," referred to as "Agreement No. 931428" (the "931428 Finance Agreement"), pursuant to which (a) Plaintiff lent funds to CHD, and CHD agreed to repay such lent funds, in accordance with the terms of the 931428 Finance Agreement, and (b) CHD granted Plaintiff a first priority security interest in the equipment purchased with the funds Plaintiff lent pursuant to the 931428 Finance Agreement (collectively, the "931428 Financed Equipment"). (*Id.* ¶ 25, Ex. C.) Pursuant to the terms of the 931428 Finance Agreement, CHD is required to make monthly payments to Plaintiff for sixty-one (61) months as follows: (a) one payment in the amount of $7,400.00 for the first month; and (b) payments in the amount of $1,498.83 per month for sixty (60) months. (*Id.* ¶ 26, Ex. C.) "In order to induce [Plaintiff] to enter into the 931428 Finance Agreement," Singh executed and delivered to Plaintiff a written personal guaranty (the "931428 Singh Guaranty") agreeing to "unconditionally guarantee . . . the payment and performance . . . of all of the obligations" owed to Plaintiff by CHD under the 931428 Finance Agreement. (*Id.* ¶ 29, Ex. C.) Plaintiff "accepted the 931428 Singh Guaranty, relied upon the same and, in consideration for the 931428 Singh Guaranty, entered into the 931428 Finance Agreement with CHD." (*Id.* ¶ 30.)

CHD "defaulted in its obligations under the 931428 Finance Agreement by . . . failing to pay the amounts due and owing thereunder when those amounts became due." (*Id.* ¶ 31.) As a result of CHD's defaults, and in accordance with the 931428 Finance Agreement, Plaintiff

"exercised its right to accelerate and declare immediately due and payable all amounts due under the 931428 Finance Agreement." (*Id.* ¶ 32. *See also id.* Ex. C.) Plaintiff "demanded that CHD pay all amounts due to [Plaintiff] under the 931428 Finance Agreement," yet, despite Plaintiff's "repeated demands," CHD has failed to pay the amounts demanded by Plaintiff and due under the 931428 Finance Agreement. (*Id.* ¶¶ 33–34.) CHD has "further failed to turn over the 931428 Financed Equipment" to Plaintiff. (*Id*. ¶ 34.) Under the 931428 Finance Agreement, like the 930282 Finance Agreement, CHD is obligated to pay attorney's fees and costs incurred by Plaintiff in enforcing the 931428 Finance Agreement. (*Id.* ¶ 36. *See also id.* Ex. C.)

Upon CHD's default under the 931428 Finance Agreement, the 931428 Singh Guaranty "allows [Plaintiff] to proceed against Singh for the amounts due under the 931428 Finance Agreement." (*Id.* ¶ 39. *See also id.* Ex. C.) Plaintiff "demanded that Singh pay all amounts due to [Plaintiff] under the 931428 Finance Agreement and the 931428 Singh Guaranty," yet, despite Plaintiff's demands, Singh has failed to pay the amounts due and owing to Plaintiff under the 931428 Finance Agreement and the 931428 Singh Guaranty. (*Id.* ¶¶ 40–41.)

### 3. Amounts Due and Owing

Following Plaintiff's unanswered demands for payment from Defendants under the 930282 Finance Agreement and the 931428 Finance Agreement (collectively the "Finance Agreements"), and the 930282 Singh Guaranty and the 931428 Singh Guaranty (collectively the "Singh Guaranties"), Plaintiff retained a recovery firm to repossess the 930282 Financed Equipment and the 931428 Financed Equipment (collectively the "Financed Equipment"). (Doc. 22-1, Declaration of Stacie Van Bibber in Support of Plt.'s Renewed Mot. for Default J. ("Van Bibber Decl."), ¶¶ 36–38.) Plaintiff sold the 930282 Financed Equipment for $4,000.00 and the 931428 Financed Equipment for $6,000.00, and applied the sale proceeds toward the amounts due and owing from Defendants. (*Id.* ¶¶ 38–39.)

As of July 31, 2017, Plaintiff alleges it has been damaged, taking into account the net sales proceeds of the 930282 Financed Equipment, in the amount of $65,268.93, in addition to (a) all costs and attorney's fees incurred and to be incurred by Plaintiff in connection with the enforcement of its remedies under the 930282 Finance Agreement (including all pre-judgment and

4

post-judgment attorney's fees and costs), and (b) post-judgment interest at the applicable rate. (*Id.* ¶ 40.) Plaintiff alleges further that under the 931428 Finance Agreement, taking into account the net sales proceeds of the 931428 Financed Equipment, it is owed $78,506.57 as of July 31, 2017, in addition to (a) all costs and attorney's fees incurred and to be incurred by Plaintiff in connection with the enforcement of its remedies under the 931428 Finance Agreement (including all pre-judgment and post-judgment attorney's fees and costs), and (b) post-judgment interest at the applicable rate. (*Id.* ¶ 41.)

**B.  Procedural History**

Plaintiff filed its Complaint in this Court on March 22, 2017. (Compl.) The Complaint includes claims against CHD for breaches of the Finance Agreements, and claims against Singh for breaches of the Singh Guaranties. (*See id.* ¶¶ 43–56.) The Complaint also alleges claims against CHD for "claim and delivery" of the 931428 Financed Equipment and the 930282 Financed Equipment. (*See id.* ¶¶ 57–62.) The Complaint includes requests for (1) the amounts due and owing under the Finance Agreements and the Singh Guaranties; (2) pre-judgment and post-judgment attorney's fees and costs; (3) post-judgment interest at the applicable rate; (4) "all other amounts" due Plaintiff under the agreements; and (5) judgment against CHD for possession of the 931428 Financed Equipment and the 930282 Financed Equipment.

Plaintiff effectuated service of the Complaint on Defendants on May 13, 2017. (*See* Docs. 8, 10.) To date, no Defendant has filed a response to the Complaint. On July 31, 2017, Plaintiff filed its original Motion for Default Judgment without having first having obtained entry of default against Defendants, which was denied without prejudice. (*See* Docs. 14, 16.) Plaintiff filed a Request for Entry of Default against all Defendants on August 9, 2017. (Doc. 17.) The Clerk entered default against all Defendants on August 10, 2017. (Docs. 18, 19.)

On August 23, 2017, Plaintiff filed its Renewed Motion for Default Judgment, requesting default judgment against Defendants. (Doc. 22.) To date, no Defendant has filed a response to this motion. In an order entered on October 2, 2017, the undersigned found that Plaintiff's Renewed Motion for Default Judgment was "suitable for decision without oral argument" and

vacated the hearing regarding this motion. (Doc. 29.) As such, Plaintiff's Motion for Default Judgment is fully briefed and ready for disposition.[1]

## II.    APPLICATION FOR WRIT OF POSSESSION

On March 27, 2017, Plaintiff filed an Application for Writ of Possession seeking "immediate possession" of the Financed Equipment so Plaintiff "can dispose of same" in accordance with the Finance Agreements (the "Application"). (Doc. 4.)

In support of its Renewed Motion for Default Judgment, Plaintiff filed the declaration of Stacie Van Bibber, a Collections Analyst for Plaintiff. (Doc. 22-1.) In her declaration, Ms. Van Bibber states that Plaintiff's retained recovery firm "repossessed the Financed Equipment and sold the 930282 Financed Equipment for $4,000.00 and the 931428 Financed Equipment for $6,000.00." (Van Bibber Decl. ¶ 38.) Accordingly, the undersigned recommends that the Application be DENIED as MOOT.[2]

## III.    RENEWED MOTION FOR DEFAULT JUDGMENT

The undersigned now turns to the merits of Plaintiff's Renewed Motion for Default Judgment. (Doc. 22.) For the reasons provided below, the undersigned finds that Plaintiff's request for default judgment has merit.

**A.    Legal Standard**

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a). *See* Fed. R. Civ. P. 55(b)(2). "[D]efault does not entitle the non-defaulting party to a default judgment as a matter of right . . . ." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 785 (9th Cir. 2011). Rather, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (citations omitted).

---

[1] In orders entered on September 19, and October 4, 2017, the undersigned directed Plaintiff to supplement the record on certain issues relating to its request for attorneys' fees and costs and the law applicable to Plaintiff's substantive claims, respectively. (Docs. 24, 30.) Plaintiff filed its responsive briefs addressing these issues on October 2, 2017, and on October 20, 2017, respectively. (Docs. 28, 34.)

[2] On March 29, 2017, the assigned district judge referred Plaintiff's Writ of Application to the undersigned "for the purposes of entering Findings and Recommendation." (Doc. 5.)

In *Eitel v. McCool*, the Ninth Circuit identified seven "[f]actors which may be considered by courts in exercising discretion as to the entry of a default judgment," including (1) "the possibility of prejudice to the plaintiff," (2) "the merits of plaintiff's substantive claim," (3) "the sufficiency of the complaint," (4) "the sum of money at stake in the action," (5) "the possibility of a dispute concerning material facts," (6) "whether the default was due to excusable neglect," and (7) "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." 782 F.2d 1470, 1471–72 (9th Cir. 1986). The "general rule" is "that default judgments are ordinarily disfavored." *Id.* at 1472. Nonetheless, in applying the *Eitel* "discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo v. Triunfo–Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *see also Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("In reviewing a default judgment, [the] court must take the well-pleaded factual allegations of [the complaint] as true." (citing *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986))). "However, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (citation omitted). Further, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Id.* (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

The undersigned shall address each of the *Eitel* factors, in turn. For the reasons that follow, the undersigned finds that these factors weigh in favor of the entry of default judgment against Defendants.

///

///

///

**B.      The Possibility of Prejudice to Plaintiff**

"The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment." *Joe Hand Promotions, Inc. v. Dhillon*, No. 2:15-cv-1108-MCE-KJN, 2015 WL 7572076, at *2 (E.D. Cal. Nov. 25, 2015). In the present matter, Defendants failed to answer the Complaint, thereby stalling this litigation and potentially prejudicing Plaintiff by leaving it with no recourse to recover the loss Plaintiff alleges was caused by Defendants' actions. The undersigned therefore finds that the first *Eitel* factor weighs in favor of the entry of default judgment. *See, e.g.*, *Otter Prods. LLC v. Ace Colors Fashion, Inc.*, No. 2:14–cv–00141–ODW(PJWx), 2014 WL 4187947, at *3 (C.D. Cal. Aug. 21, 2014) (stating that "[a] plaintiff suffers prejudice" under the first *Eitel* factor "if there is no recourse for recovery absent default" (citing *Philip Morris USA, Inc.*, 219 F.R.D. at 499)).

**C.      The Merits of Plaintiff's Claims and the Sufficiency of the Complaint**

"The second and third *Eitel* factors address the merits and sufficiency of [the plaintiff's] claims pled in the complaint." *HICA Educ. Loan Corp. v. Warne*, No. 11–CV–04287–LHK, 2012 WL 1156402, at *2 (N.D. Cal. Apr. 6, 2012). *See generally U.S. ex rel. Hajoca Corp. v. Aeroplate Corp.*, No. 1:12–cv–1287–AWI–BAM, 2013 WL 3729692, at *3 (E.D. Cal. July 12, 2013) (addressing the second and third *Eitel* factors "together because of the relatedness of the two inquiries"). "Together, 'these two factors require that a plaintiff state a claim on which the plaintiff may recover.'" *Rolex Watch U.S.A., Inc. v. Watch Empire LLC*, CASE NO.: CV 13-09221-SJO (FFMx), 2015 WL 9690322, at *3 (C.D. Cal. Sept. 29, 2015) (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)); *see, e.g.*, *Discovery Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001) ("The Ninth Circuit has suggested that the . . . two *Eitel* factor[s] . . . involving the substantive merits of [the plaintiff's] claims and the sufficiency of the complaint . . . 'require that [the] plaintiff's allegations state a claim on which they may recover.'" (quoting *Kloepping v. Fireman's Fund*, No. C-94-2684, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996))).

///

Here, the Complaint includes claims against CHD for breaches of the Finance Agreements, and claims against Singh for breaches of the Singh Guaranties.[3]  (*See* Compl. ¶¶ 43–56.)  The Finance Agreements include an identical choice-of-law provision that states they "shall be governed by and construed under the laws of the State of Nebraska without reference to its principles of conflicts of law."  (Compl., Exs. A , C.)  This "governing law" provision also "appl[ies] to any action to enforce" the Singh Guaranties.  (*Id.*)  Plaintiff contends that this choice-of-law provision is enforceable under California choice of law rules and that Nebraska law therefore governs Plaintiff's breach of contract claims.  (Doc. 34 at 1–4.)

### 1.    The Choice-of-Law Provision in the Agreements and the Guaranties is Enforceable.

A federal court sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law.  *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005).  Thus, a federal court in California exercising its diversity jurisdiction must ordinarily follow California's choice-of-law rules.  When a contract contains a choice-of-law provision, courts applying California's choice-of-law rules follow *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459 (1992).  In determining under *Nedlloyd* whether a choice-of-law provision is enforceable, the Court should follow the analysis governed by Restatement Section 187.  3 Cal. 4th at 464-65, "[T]he proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law."  *Id.* at 466.  *See also 1–800–Got Junk? LLC v. Super. Ct.*, 189 Cal. App. 4th 500, 513–14 (2010) (In California, "a freely and voluntarily agreed-upon choice of law provision in a contract is enforceable 'if the chosen state has a substantial relationship to the parties or the transaction or any other reasonable basis exists for the parties' choice of law.'" (quoting *Trust One Mortg. Corp. v. Invest Am. Mortg. Corp.*, 134 Cal. App. 4th 1302, 1308 (2005)).  There is "a strong policy in favor enforcing such provisions."  *Id.* at 513.

---

[3] Plaintiff also alleges "claim and delivery" of the Financed Equipment so that it may possess the equipment and "dispute of same."  (*See id.* ¶¶ 57–62.)  Because Plaintiff has already repossessed and sold the Financed Equipment, *see* Van Bibber Decl. ¶¶36–39, these claims are moot and therefore not considered in the *Eitel* analysis.

Here, the transaction has a substantial relationship to Nebraska. Specifically, Plaintiff is a Nebraska corporation with its principal place of business in Nebraska. (*See* Compl. ¶ 1.) Nebraska therefore has a substantial relationship to the transaction, and the parties' choice of law had a reasonable basis. *Nedlloyd*, 3 Cal. 4th at 467 (the chosen state has a substantial relationship to the parties or their contract when "one of the parties is domiciled" in that state.). *See also Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881, 899 (1998) ("[T]he mere fact that one of the parties resides in the chosen state provides a 'reasonable basis' for the parties' choice of law."); Restatement (Second) of Conflict of Laws § 187 cmt f (recognizing that a substantial relationship exists "where one of the parties is domiciled or has his principal place of business.").

**2. There Has Been No Showing that the Application of Nebraska Law to Plaintiff's Breach of Contract Claims is Contrary to a Fundamental Public Policy of California or that California Has a Materially Greater Interest in Determination of Such Claims.**

"[I]f the proponent of the clause demonstrates that the chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law, the parties' choice generally will be enforced *unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue.*" *1–800–Got Junk? LLC v. Super. Ct.,* 189 Cal. App. 4th at 514 (emphasis in original).

Defendants have not appeared in this action, and therefore have neither shown that applying Nebraska law to Plaintiff's breach of contract claims is contrary to a fundamental policy of California, nor demonstrated that California has a materially greater interest in the determination of those claims. Accordingly, the Court finds the Agreements' and Guaranties' choice-of-law provision enforceable as to Plaintiff's breach of contract claims against Defendants.

**3. Application of Nebraska Law.**

"Under Nebraska law, in order to recover for a breach of contract, the plaintiff must prove a promise, the breach of that promise, and damages resulting from that breach." *Valley Boys, Inc. v. State Farm Fire & Cas. Co.*, No. 8:14CV159, 2014 WL 5393522, at *3 (D. Neb. Oct. 22, 2014).

(citing *K.M.H. v. Lutheran Gen. Hosp.*, 431 N.W.2d 606, 608 (Neb. 1988)).   Plaintiff has established each of the elements of its breach-of-contract claim against Defendants.  As to the first element, under the Finance Agreements, Plaintiff promised to lend funds to CHD, and CHD promised to repay such lent funds.  (*See* Compl., Exs. A, C.)  Singh promised, under the Singh Guaranties, to "unconditionally guarantee" the "payment and performance when due of all of the obligations" of CHD under the Finance Agreements.  (*Id.*)

Regarding the second element, Plaintiff sufficiently asserts in the Complaint that CHD breached its promise by "fail[ing] to make several payments when due" under the terms of the Finance Agreements.  (Compl. ¶¶ 45, 52.)  Plaintiff further asserts that Singh breached his promise by "refus[ing] and continu[ing] to refuse to pay the amounts owing" under the Singh Guaranties. (*Id.* ¶¶ 48, 55.)  Finally, Plaintiff alleges that it suffered damages due to Defendants' conduct in the form of not receiving the funds due and owing under the Finance Agreements, either under those agreements or pursuant to the Singh Guaranties.  (*Id.* ¶¶ 19, 38, 49, 56.)

Based on the foregoing, the undersigned finds that Plaintiff has adequately stated claims for breach of contract under Nebraska law against Defendants.  *See, e.g.*, *Valley Boys, Inc.*, 2014 WL 5393522, at *3 (providing the elements for a breach-of-contract claim under Nebraska law (citations omitted)).   The undersigned therefore finds that the second and third *Eitel* factors are satisfied here.  *See, e.g.*, *Rolex Watch U.S.A., Inc.*, 2015 WL 9690322, at *3 (stating that the second and third *Eitel* factors together "require that a plaintiff state a claim on which the plaintiff may recover" (citation omitted)).

**D.      The Sum of Money at Stake**

Turning to the fourth *Eitel* factor, "the court must [next] consider the amount of money at stake in relation to the seriousness of [the defendant's] conduct."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176-77.  "This requires the court [to] assess whether the recovery sought is proportional to the harm caused by [the] defendant's conduct."  *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) (citing *Walters v. Statewide Concrete Barrier, Inc.*, No. C 04–2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006)).  "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to [the] defendant's

conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014) (citing *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)); *see also BR North 223, LLC v. Glieberman*, No. 1:10–cv–02153 LJO–BAM, 2012 WL 639500, at *5 (E.D. Cal. Feb. 27, 2012) ("In general, the fact that a large sum of money is at stake is a factor disfavoring default judgment." (citations omitted)). "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *HICA Educ. Loan Corp. v. Warne*, No. 11–CV–04287–LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012) (citation omitted).

In support of its Renewed Motion for Default Judgment, Plaintiff filed the declaration of Stacie Van Bibber, a Collections Analyst for Plaintiff. (Doc. 22-1.) In her declaration, Ms. Van Bibber states that, "[a]s a proximate result of CHD's defaults of its obligations under the 930282 Finance Agreement"—as well as Singh's similar failure to pay this debt pursuant to the 930282 Singh Guaranty—Plaintiff has been damaged, taking into account the net sales proceeds of the 930282 Financed Equipment, in the sum of $65,268.93, in addition to (a) all costs and attorney's fees incurred and to be incurred by Plaintiff in connection with the enforcement of its remedies under the 930282 Finance Agreement (including all pre-judgment and post-judgment attorney's fees and costs), and (b) post-judgment interest at the applicable rate. (Van Bibber Decl., ¶ 40.) Ms. Van Bibber further states that, "[a]s a proximate result of CHD's defaults of its obligations under the 931428 Finance Agreement"—as well as Singh's similar failure to pay this debt pursuant to the 931428 Singh Guaranty—Plaintiff has been damaged, taking into account the net sales proceeds of the 931428 Financed Equipment, in the sum of $78,506.57, in addition to (a) all costs and attorney's fees incurred and to be incurred by Plaintiff in connection with the enforcement of its remedies under the 931428 Finance Agreement (including all pre-judgment and post-judgment attorney's fees and costs), and (b) post-judgment interest at the applicable rate. (*Id.* ¶ 41.)

The undersigned finds that Plaintiff has provided adequate evidence in the form of Ms. Van Bibber's declaration to support its assertion that Plaintiff suffered harm in the amount of $143,775.50 due to Defendants' conduct. Furthermore, the record does not include any evidence

or assertions indicating that $143,775.50 plus post-judgment interest is a disproportionate amount of money compared to the harm caused by Defendant's conduct. The undersigned therefore finds that the sum of money at stake in this action—$143,775.50 plus post-judgment interest—is sufficiently proportionate to the harm caused by Defendants' conduct to satisfy the fourth *Eitel* factor. *See, e.g.*, *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 921 (finding that the fourth *Eitel* factor weighed in favor of granting default judgment where, in part, the plaintiff "proffer[ed]" a declaration providing the amount "still due and owing").

**E.     The Possibility of a Dispute Concerning the Material Facts**

"The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case." *United States v. Sterling Centrecorp, Inc.*, No. 2:08–cv–02556 MCE JFM, 2011 WL 2198346, at *6 (E.D. Cal. June 6, 2011) (quoting *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010)). There is little possibility of dispute in this case. Plaintiff included well-pleaded allegations in the Complaint—which the Court accepts as true in the instant analysis—that Defendants breached the terms of the Finance Agreements and the Singh Guaranties. (*See* Compl.) Additionally, Plaintiff has provided evidence supporting its assertion that Defendants owed an outstanding balance of $143,775.50 as of July 31, 2017. (Van Bibber Decl. ¶¶ 40–41.) Finally, Defendants declined to participate—or even appear—in this case to contest Plaintiff's allegations. The undersigned therefore finds that, based on the record in this case, the fifth *Eitel* factor weighs in favor of granting default judgment. *See, e.g.*, *Vogel*, 992 F. Supp. 2d at 1013 ("Since [the plaintiff's] factual allegations are presumed true and [the defendant] has failed to oppose the motion, no factual disputes exist that would preclude the entry of default judgment."); *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 922 ("Since [the plaintiff] has supported its claims with ample evidence, and [the] defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.").

**F.     Whether Defendants' Default Was Due to Excusable Neglect**

"The [sixth] *Eitel* factor considers whether a defendant's default may have resulted from excusable neglect." *Vogel*, 992 F. Supp. 2d at 1013 (citation omitted). *See generally United*

*States v. Sanders*, Case No. 1:16-cv-00031-DAD-SAB, 2016 WL 5109939, at *4 (E.D. Cal. Sept. 20, 2016) ("Due process requires that all interested parties be given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objections before a final judgment is rendered." (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003))). In the present action, the record reflects that Plaintiff effectuated service on Defendants on May 13, 2017. (*See* Docs. 8, 10.) Nonetheless, Defendants failed to respond to the instant Renewed Motion for Default Judgment or otherwise participate in this litigation. It is therefore "unlikely" that Defendants' "failure to answer, and the resulting default[] entered by the Clerk of Court, [was] the result of excusable neglect." *State Farm Life Ins. Co. v. Canul*, No. 1:11–cv–01787, 2012 WL 1192778, at *3 (E.D. Cal. Apr. 10, 2012) (citing *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001)); *see, e.g.*, *Kuei*, 194 F. Supp. 2d at 1005 (finding that the defendants' default could not "be attributable to excusable neglect" where they "were properly served with the [c]omplaint, the notice of entry of default, [and] the papers in support of the . . . motion" for entry of default judgment); *see also Protective Life Ins. Co. v. Phillips*, No. CIV S-08-0035 JAM EFB, 2008 WL 4104284, at *3 (E.D. Cal. Aug. 26, 2008) (stating that a defendant's "failure to respond cannot be deemed 'excusable neglect'"). Accordingly, the undersigned finds that this factor weighs in favor of granting Plaintiff's request for the entry of default judgment.

### G. Policy Favoring Decisions on the Merits

The seventh and final *Eitel* factor requires consideration of "the strong policy favoring decisions on the merits." *Drew v. Lexington Consumer Advocacy, LLC*, Case No. 16-cv-00200-LB, 2016 WL 1559717, at *10 (N.D. Cal. Apr. 18, 2016) (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). Of course, the "general rule" is "that default judgments are ordinarily disfavored" and "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citation omitted); *see also Collin v. Zeff*, No. CV12–8156 PSG (AJW), 2013 WL 3273413, at *7 (C.D. Cal. June 24, 2013) ("The Ninth Circuit has emphasized that 'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" (quoting *United States v. Signed Pers.*

*Check No. 730 of Ybran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010))). As default judgment would dispose of this case on grounds other than the merits of Plaintiff's claim against Defendants, the undersigned finds that this factor weighs against the entry of default judgment. *See, e.g.*, *United States v. Ordonez*, No. 1:10–cv–01921–LJO–SKO, 2011 WL 1807112, at *3 (E.D. Cal. May 11, 2011) (noting that the seventh *Eitel* factor "inherently weighs strongly against awarding default judgment in every case"). Nonetheless, as Defendants' failure to participate in this litigation makes "a decision on the merits impractical, if not impossible," the Court "is not precluded from entering default judgment against" Defendants. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

In summary, six of the *Eitel* factors weigh in favor of default judgment, while the strong policy in favor of deciding cases on their merits weighs against the entry of default judgment. "While the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action." *HICA Educ. Loan Corp. v. Warne*, No. 11–CV–04287–LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012) (citations omitted). As only this policy consideration weighs against default judgment, the undersigned finds that, on balance, the *Eitel* factors favor the entry of default judgment against Defendants. *See, e.g.*, *Ordonez*, 2011 WL 1807112, at *3 (finding that, "[i]n the aggregate," the seventh *Eitel* factor "is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment"); *Warne*, 2012 WL 1156402, at *3 ("In the aggregate, the seventh *Eitel* factor is outweighed by the other six factors that weigh in favor of default judgment." (citation omitted)).

## IV.    AMOUNT OF JUDGMENT

While analysis of the *Eitel* factors supports a default judgment, the Court also considers the proof of the damages and the terms of the judgment sought by Plaintiff. "A plaintiff seeking default judgment 'must . . . prove all damages sought in the complaint.'" *Warne*, 2012 WL 1156402, at *4 (quoting *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1046 (N.D. Cal. 2010)). "The Court considers Plaintiff's declarations, calculations, and other documentation

of damages in determining if the amount at stake is reasonable." *United States v. Yermian*, Case No. SACV 15-0820-DOC (RAOx), 2016 WL 1399519, at *3 (C.D. Cal. Mar. 18, 2016) (quoting *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06–CV–03594, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)). Additionally, "a default judgment must be supported by specific allegations as to the exact amount of damages asked for in the complaint." *Philip Morris USA, Inc.*, 219 F.R.D. at 499. "[I]f the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default." *Id.* at 498 (citing *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)). "Entry of default judgment for money is appropriate without a hearing if 'the amount claimed is a liquidated sum or capable of mathematical calculation.'" *Warne*, 2012 WL 1156402, at *4 (quoting *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981)); *see also Yermian*, 2016 WL 1399519, at *3 ("Rule 55 does not require the court to conduct a hearing on damages, so long as it ensures there is an adequate basis for the damages awarded in the default judgment." (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991))).

Furthermore, "pursuant to Federal Rule of Civil Procedure 54(c), '[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.'" *Drew*, 2016 WL 1559717, at *11 (quoting Fed. R. Civ. P. 54(c)). "The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against him so that he may make a calculated decision as to whether or not it is in his best interest to answer." *Id.* (citing *In re Ferrell*, 539 F.3d 1186, 1192–93 (9th Cir. 2008) and *Bd. of Trs. of the Sheet Metal Workers Local 104 Health Care Plan v. Total Air Balance Co.*, No. 08-2038 SC, 2009 WL 1704677, at *3–5 (N.D. Cal. June 17, 2009)).

Here, Plaintiff requests $143,775.50 in actual damages from all Defendants, "jointly and severally." (Compl. ¶¶ 46, 49, 53, 56; Doc. 22 at 2.) This amount in damages is supported by the declaration of Plaintiff's Collections Analyst, Stacie Van Bibber, in which Ms. Van Bibber states that, "[a]s a proximate result of CHD's defaults of its obligations under the 930282 Finance Agreement"—as well as Singh's similar failure to pay this debt pursuant to the 930282 Singh Guaranty—Plaintiff has been damaged, taking into account the net sales proceeds of the 930282

Financed Equipment, in the sum of $65,268.93, in addition to (a) all costs and attorney's fees incurred and to be incurred by Plaintiff in connection with the enforcement of its remedies under the 930282 Finance Agreement (including all pre-judgment and post-judgment attorney's fees and costs), and (b) post-judgment interest at the applicable rate. (Van Bibber Decl., ¶ 40.) Ms. Van Bibber further states that, "[a]s a proximate result of CHD's defaults of its obligations under the 931428 Finance Agreement"—as well as Singh's similar failure to pay this debt pursuant to the 931428 Singh Guaranty—Plaintiff has been damaged, taking into account the net sales proceeds of the 931428 Financed Equipment, in the sum of $78,506.57, in addition to (a) all costs and attorney's fees incurred and to be incurred by Plaintiff in connection with the enforcement of its remedies under the 931428 Finance Agreement (including all pre-judgment and post-judgment attorney's fees and costs), and (b) post-judgment interest at the applicable rate. (*Id.* ¶ 41.)

The undersigned finds that Plaintiff has adequately identified the specific amount of damages requested and provided sufficient declarations and other documentation to meet its burden in establishing an amount of damages of $143,775.50. The undersigned therefore recommends that the presiding district court judge award Plaintiff actual damages in the amount of $143,775.50.

## V.     ATTORNEY'S FEES AND COSTS

The Finance Agreements both provide that CHD "shall reimburse [Plaintiff] for all costs we incur when enforcing our rights including our attorney's fees and costs of repossession, storage, and remarketing of the Collateral." (Compl., Exs. A , C.) The Singh Guaranties likewise provide that Singh "agree[s] to pay [Plaintiff] all our expenses in enforcing" the Singh Guaranties. (*Id.*) Plaintiff requests that the Court award attorney's fees and costs under the Finance Agreements and/or the Singh Guaranties. (*See, e.g.*, Doc. 22 at 2.) The undersigned shall separately address the fees and costs issues.

### A.     Attorney's Fees

As set forth above, both the Finance Agreements and the Singh Guaranties are "governed by and construed under the laws of the State of Nebraska." (*See* Section III.C., *supra*.) Unsurprisingly, Plaintiff contends, in contrast to its breach of contract claims, that California—not

Nebraska—law should apply under *Nedlloyd* to its request for attorney's fees.  (*See* Doc. 34 at 4.)
Plaintiff asserts that California has a fundamental policy concerning the reciprocity of attorney's
fee provisions in contracts and California has a materially greater interest that Nebraska in the
determination of that issue.  (*See id.* at 4–6.)

### 1.    The Application of Nebraska Law is Not "Contrary to" a Fundamental Policy of California.

Although Plaintiff does not discuss Nebraska law in its briefing[4], the Court observes that
under Nebraska law "contractual agreements for attorney fees are against public policy and will
not be judicially enforced," absent a "uniform course of procedure or authorization by statute."
*Lee v. Walman Optical Co.*, No. 8:14CV272, 2016 WL 270854, at *2 (D. Neb. Jan. 21, 2016)
(quoting *Stewart v. Bennett*, 727 N.W.2d 424, 429 (Neb. 2007)).  *See also GFH Fin. Servs. Corp.
v. Kirk*, 437 N.W.2d 453, 459 (Neb. 1989) ("[A] contractual provision that in the event of any
dispute or litigation involving the contract, the prevailing party shall be entitled to recover all costs
of suit, including reasonable attorney fees, is contrary to public policy and void."); *First Nat'l
Bank in Ord v. Schroeder*, 355 N.W.2d 780, 783 (Neb. 1984) ("[W]e hold that a provision in a
security agreement which seeks to impose an attorney fee on a debtor as a part of the costs of suit
to enforce the security agreement and its underlying contract is contrary to the public policy of
Nebraska and, therefore, void and unenforceable."); *Dernick Res., Inc. v. Wilstein*, No.
7:07CV5009, 2007 WL 2688900, at *3 (D. Neb. Sept. 13, 2007) ("[P]arties to a contract dispute
cannot recover attorney's fees under Nebraska law.").  Plaintiff, however, has not shown that
applying Nebraska law to its request for attorney's fees under the Finance Agreements and the
Singh Guaranties is "contrary to" a fundamental policy of California.  *ABF Capital Corp. v. Grove
Properties Co.*, 126 Cal. App. 4th 204, 216 (2005) (citing *Nedlloyd*, 3 Cal. 4th at 466).  While
Plaintiff is correct that California has a fundamental policy in favor of reciprocity of attorney's fee
provisions in contracts, *see ABF Capital Corp.*, 126 Cal. App. 4th at 217, the issue to be

---

[4] Apparently believing in the strength of its position that "California law governs the award of attorney's fees and costs," Plaintiff "did not analyze the outcome under Nebraska law." (Doc. 34 at 6 n5.) This is despite the fact that the Court expressly ordered Plaintiff to include in its supplemental briefing on whether it could recover attorney's fees "assuming Nebraska law applies." (*See* Doc. 30 at 2.)

determined is whether Nebraska's prohibition of *all* contractual attorney's fees provisions—both reciprocal and nonreciprocal—conflicts with California's fundamental policy that nonreciprocal attorney's fees contractual provisions create reciprocal rights to such fees, as articulated in California Civil Code section 1717.[5] The Court concludes it does not.

California follows the "American rule," which provides that, except as provided by statute or agreement, each party to a lawsuit ordinarily must pay his own fees. *Musaelian v. Adams*, 45 Cal. 4th 512, 516 (2009); *Trope v. Katz*, 11 Cal. 4th 274, 279 (1995). *See* California Code of Civil Procedure § 1021 ("Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ."). Pursuant to Code of Civil Procedure section 1021, parties may "contract out" of the American rule by entering into an "agreement, express or implied," that allocates attorney's fees. *See* Cal. Civ. Proc. Code § 1021; *Lockton v. O'Rourke*, 184 Cal. App. 4th 1051, 1070 (2010) (citing *Trope*, 11 Cal. 4th at 279). There is no requirement under California law, however, that parties to a contract ***must*** include in that contract a provision awarding fees in the event of a dispute over the contract. Put another way, where Nebraska law mandates that any provision allocating attorney's fees must be "read out" of a contract as unenforceable, *see Stewart*, 727 N.W.2d at 427–28, there is no countervailing requirement under California law that an attorney's fee provision must be "read into" a contract where none exists. Thus, no conflict exists between the two.[6] *Cf. Ribbens Int'l, S.A. de C.V. v. Transp. Int'l Pool, Inc.*, 47 F. Supp. 2d 1117,

---

[5] California Civil Code section 1717 provides, in relevant part:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. . . . Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void.

Cal. Civ. Code § 1717. The goal of Civil Code section 1717 is "to prevent unfair litigation tactics through one-sided attorney fee provisions." *ABF Capital Corp.*, 126 Cal. App. 4th at 217.

[6] California law, which permits the award of attorney's fees in breach of contract actions, stands in stark contrast to the law of Texas, for example, which ***mandates*** an award of reasonable attorney's fees to the prevailing party in such actions. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8); *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 (5th Cir. 2002). Thus, unlike California, there exists a "true conflict" between the laws of Texas and Nebraska with respect to the

1119 (C.D. Cal. 1999) (rejecting the plaintiff's contention that because Pennsylvania is "silent" on the issue of mutuality of contractual attorney's fees provisions, it does not conflict with the law of California: "Pennsylvania law provides for recovery of attorney's fees by a party in a contract case in certain, limited situations, which situations do not include a party prevailing in an action involving a contract with a one-way attorney's fees provision running in favor of the other party. . . . Thus, Pennsylvania law, as the Court understands it, is inconsistent with California law with respect to the mutuality issue under consideration.") (internal citations omitted). Instead, California law, and the fundamental policy underpinning it, provides that *if* a contract contains a provision that award attorney's fees to the prevailing party in any dispute over that contract, such provision should apply mutually, Cal. Civ. Code § 1717, and state laws that permit nonreciprocal contractual attorney fees provisions are contrary to that fundamental policy in favor of reciprocity, *ABF Capital Corp.*, 126 Cal. App. 4th at 211, 217, 223. *See First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1156–57 (9th Cir. 2015); *Daniel Indus., Inc. v. Barber-Colman Co.*, 8 F.3d 26 (9th Cir. 1993); *Ribbens*, 47 F. Supp. 2d at 1126.

Because Plaintiff cannot demonstrate that the application of Nebraska law is "contrary to" a fundamental policy of California, the Court need not consider whether California has a "materially greater interest" than Nebraska in determining the attorney's fees issue, and will therefore enforce the parties' choice-of-law provision and apply Nebraska law to Plaintiff's request for attorney's fees under the Finance Agreements and the Singh Guaranties. *ABF Capital Corp.*, 126 Cal. App. 4th at 216 (The court must determine "whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law.") (citing *Nedlloyd*, 3 Cal. 4th at 466). *See Levine Leichtman Capital Partners III, L.P. v. Shaker Constr. Grp.*, LLC, No. CV 08-01252 DDP (EX), 2008 WL 11336778, at *2 (C.D. Cal. June 10, 2008) (declining to continue choice-of-law analysis where the defendant did not "carry its burden of showing a conflict between California law and Mississippi law").

---

recovery of attorney's fees. *See Mut. Concepts v. First Nat. Bank of Omaha*, 495 Fed. Appx. 514, 517 (5th Cir. 2012) (unpublished).

**2.  Plaintiff is Not Entitled to its Attorney's Fees Under Nebraska Law.**

As set forth above, "Nebraska law allows the recovery of attorney fees and expenses only where such recovery is provided by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees." *AT & T v. ASHA Distrib., Inc.*, No. 8:04CV296, 2006 WL 176636, at *1 (D. Neb. Jan. 23, 2006) (citing *Nebraska Nutrients, Inc. v. Shepherd*, 626 N.W.2d 472, 517 (Neb. 2001). *See also Lamb Eng'g & Constr. Co. v. Nebraska Pub. Power Dist.*, 103 F.3d 1422, 1434 (8th Cir. 1997).  A contractual provision that permits a party to recover attorney's fees incurred in judicially enforcing its rights under the contract, such as that contained in the Finance Agreements and the Singh Guaranties, is "contrary to public policy and void." *GFH Fin. Servs. Corp.*, 437 N.W.2d at 459.  *See also Lee*, 2016 WL 270854, at *2; *First Nat'l Bank*, 355 N.W.2d at 783; *Dernick Res., Inc.*, 2007 WL 2688900, at *3.  Moreover, Plaintiff has not cited, nor has the Court located, any Nebraska statute or "uniform course of procedure" that would allow the recovery of attorney's fees for Plaintiff's breach of contract claims, particularly where there is no indication in the record that Plaintiff's claims are frivolous or brought in bad faith, *see, e.g.,* Neb. Rev. Stat. § 25–824(2) ("in any civil action commenced . . . in any court of record in this state, the court shall award as part of its judgment  . . . reasonable attorney's fees . . .  against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith").  *See Allmand Bros. v. Applied Equip. & Eng'g*, No. 4:12CV3199, 2013 WL 4806390, at *1 (D. Neb. Sept. 9, 2013) (citing *Lamb Eng..*, 103 F.3d at 1434 ("We find no Nebraska statute which provides for recovery of attorney fees in a contract action.")); AT & T, 2006 WL 176636, at *1 (D. Neb. Jan. 23, 2006) ("There is no Nebraska statute providing for recovery of attorney fees in a contract action, and no 'uniform course of procedure' has been established in that regard.")

In sum, the Court finds that the contractual provision permitting Plaintiffs to recover attorney's fees incurred in enforcing its rights under the Finance Agreements and Singh Guaranties is unenforceable under Nebraska law, and there is no Nebraska statute or "uniform course of procedure" providing for recovery of attorney's fees in a contract action.   The

undersigned therefore recommends that the presiding district court judge deny Plaintiff's request for attorney's fees.[7]

## B.    Costs

Plaintiff also requests that the Court award costs.  Unlike the issue of attorney's fees, which are governed by state law, "the award of costs is governed by federal law under Rule 54(d)" as "a general proposition."  *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n.2 (9th Cir. 1987); *see, e.g.*, *United States v. Safeco Ins. Co. of Am.*, 116 F.3d 487, at \*2 (9th Cir. 1997) ("As a general proposition, an award of costs is governed by federal law . . . under Rule 54(d)." (citations omitted)); *United Cal. Bank v. THC Fin. Corp.*, 557 F.2d 1351, 1361 (9th Cir. 1977) (applying federal law as to costs and state law on the issue of attorneys' fees); *Bmo Harris Bank N.A. v. Singh*, Case No. 1:16-cv-00482-DAD-SAB, 2016 WL 5798841, at \*14 (E.D. Cal. Oct. 4, 2016) ("In a diversity action, federal not state law controls the issue of costs.") (citing *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995))); *Am. Boat Racing Ass'n v. Richards*, No. 2:14–cv–1909–KJM–KJN, 2015 WL 1320956, at \*8 (E.D. Cal. Mar. 24, 2015) ("[F]ederal law governs the award of costs even in a diversity action.") (citing *DCI Sols. Inc. v. Urban Outfitters, Inc.*, No. 10cv0369–IEG (BGS), 2012 WL 1409610, at \*2 (S.D. Cal. Apr. 23, 2012))).  Title 28 U.S.C. § 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority."[8]  *Grove v. Wells Fargo Fin. Cal., Inc.*, 606

---

[7] It bears noting that the posture of this case is "anomalous," in that Plaintiff is seeking to avoid the choice-of-law provision it itself drafted in order to secure recovery of its attorney's fees. *See, e.g.*, *1-800-Got Junk? LLC v. Superior Court*, 189 Cal. App. 4th 500, 504 n.2 (2010).  While the recommended outcome is undoubtedly undesirable to Plaintiff, the Court observes that Plaintiff was in the best position to avoid the invalidation of its attorney's fee contractual provision.  *See Maxim Crane Works, L.P. v. Tilbury Constructors*, 208 Cal. App. 4th 286, 294 (2012) (citing Cal. Civ. Code, § 1654; *Mills v. Hunter*, 103 Cal. App. 2d 352, 357–358 (1951) ("We are well aware of the rule that printed contracts must be interpreted most strongly against the party preparing the form.)).  As a Nebraska company (*see* Compl. ¶ 1), Plaintiff is presumed to know Nebraska law.  *Id.* (citing 31A C.J.S. Evidence § 228 (parties "presumed to know the general public laws of the state or country where they reside, and the legal effect of their acts")).  The relevant Nebraska law deeming contractual attorney's fees clauses contrary to public policy and void long predated the signing of Finance Agreements and the Singh Guaranties.  *See, e.g., GFH Fin. Servs. Corp.*, 437 N.W.2d at 459; *First Nat'l Bank*, 355 N.W.2d at 783.  Plaintiff could have simply avoided its plight by choosing the specific categories of another, attorney-fee-permissive state to govern the agreements.

[8] Federal Rule of Civil Procedure 54(d)(1) provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Rule 54 provides "a decided preference for the award of costs to the prevailing party." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2005–06 (2012) (citation omitted).  Nonetheless, "the 'discretion granted by Rule 54(d) is not a power to evade' the specific categories of costs set forth by Congress." *Id.* (quoting *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 438 (1987)).  Instead, Rule 54(d) "is solely a power to decline to tax, as costs, the items enumerated in § 1920." *Id.* (citation omitted).

F.3d 577, 579 (9th Cir. 2010) (citation omitted). The costs that are taxable under section 1920 "are limited to relatively minor, incidental expenses," including "clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012). "Taxable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators." *Id.* "It comes as little surprise, therefore, that costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Id.* (citation omitted).

Plaintiff requests costs in the amount of $2,077.16, allocated as follows: (1) $ 400 in filing fees; (2) $1,641.00 in fees paid to a process server; (3) $9.28 in fees paid to "Federal Express Delivery Service"; (4) $14.88 for online and database research ($5.30 for "Pacer – Online Research" and $9.58 for "Lexisnexis Risk Solutions GA Inc."); and (5) $12.00 for a 60-page "Inside Document Production."[9] (Doc. 28-1, Declaration of Lisa M. Simonetti, Esq. ("Simonetti Decl."), ¶ 7 and Ex. 1 at 9; Doc. 28-2, Declaration of Mitchell D. Cohen, Esq. ("Cohen Decl."), ¶ 9; Doc. 28-4, Declaration of Fleming L. Ware, Esq. ("Ware Decl."), ¶ 8.) With respect to Plaintiff's requests for filing and process server fees, Plaintiff provided sufficient documentation in the form of Ms. Simonetti's declaration demonstrating that it incurred $400 in filing fees and $1,641.00 in service fees during the course of this action. (*See* Simonetti Decl. ¶ 7 and Ex. 1 at 9.) These costs for filing and service fees are properly recoverable by Plaintiff. *See, e.g.*, *Direct Connect Logistix, Inc. v. Road Kings Trucking Inc.*, Case No. 1:16-cv-01006-AWI-SKO, 2016 WL 6608924, at *10 (E.D. Cal. Nov. 9, 2016) ("The costs associated with filing this action and serving [the defendants] are properly recoverable by [the plaintiff]." (citations omitted)); *Family Tree Farms, LLC v. Alfa Quality Produce, Inc.*, No. 1:08–cv–00481–AWI–SMS, 2009 WL 565568, at *10 (E.D. Cal. Mar. 5, 2009) ("Marshal's fees and fees for service by a person other than the Marshall under [Federal Rule of Civil Procedure] 4 may be recovered; private process

---

[9] In its briefing related to the Renewed Motion for Default Judgment, Plaintiff sought costs in an aggregate amount, with no information as to the allocation of such costs. (*See* Doc. 22-7 at 2.) Following an inquiry from the Court, Plaintiff provided an itemization of the costs requested, along with supporting declarations. (*See* Simonetti Decl. ¶ 7 and Ex. 1 at 9; Cohen Decl., ¶ 9; Ware Decl. ¶ 8.).

servers' fees are properly taxed as costs." (citing *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 178 (9th Cir. 1990))). *See generally Alflex Corp.*, 914 F.2d at 178 ("In making Marshal's fees taxable as costs in section 1920(1), we believe Congress exhibited an intent to make service of process a taxable item. . . . Now that the Marshal is no longer involved as often in the serving of summonses and subpoenas, the cost of private process servers should be taxable under 28 U.S.C. § 1920(1).").

Regarding Plaintiff's requests for Federal Express delivery fees and computerized research costs, Plaintiff does not provide any legal authority in support of such requests.[10] Furthermore, courts within this Circuit, including this one, have specifically declined to award costs in situations similar to each category of requested costs. *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A*, No. 2:16–cv–01045–TLN–CKD, 2017 WL 4310618, at *3 (E.D. Cal. Sept. 28, 2017) (declining to award costs under 28 U.S.C. § 1920 for "Federal Express deliveries"); *Graff v. City of Tehachapi*, Case No. 1:14-CV-00095-LJO-JLT, 2016 WL 4944005, at *5 (E.D. Cal. Sept. 16, 2016) (finding that "computer based legal research is not taxable as costs that may be recovered by a prevailing party" under section 1920); *Alexander MFG., Inc., Employee Stock Ownership and Trust v. Illinois Union Ins. Co.*, 688 F. Supp. 2d 1170, 1176–77 (D. Or. 2010) (finding courier fees and computerized legal research were not recoverable under § 1920); *ExxonMobil Oil Corp. v. Gasprom Inc.*, Case No. CV 08–7259 PSG (Ex), 2010 WL 11515365, at *5 (C.D. Cal. May 18, 2010) ("§ 1920 does not include costs for messenger services . . . .miscellaneous service fees, [and] pacer fees . . . ."). Plaintiff's request for a 60-page "Inside Document Production" is likewise deficient. While section 1920(4) authorizes recovery of the costs of "making copies of any materials where the copies are necessarily obtained for use in the case," Plaintiff's description of "Inside Document Production" is too generic a description to assist the Court in determining whether that task falls within the scope of section 1920(4). *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 928 (9th Cir. 2015) ("The proper application of a narrowly construed § 1920(4) requires that the tasks and services for which an award of costs is

---

[10] This is despite the Court's order instructing Plaintiff to file a "brief discussion of whether the costs Plaintiff requests are recoverable under federal law." (*See* Doc. 24 at 2.)

being considered must be described and established with sufficient specificity, particularity, and clarity as to permit a determination that costs are awarded for making copies. 'Document production' and other similarly generic statements on the invoices are unhelpful in determining whether those costs are taxable."). Moreover, if a copy of a document was created solely for the convenience of counsel, as Plaintiff's "Inside Document Production" appears to be, the cost of making the copy would not be taxable.[11] *See id.* at 929. In sum, having cited no federal statute, rule, or case law in support of these requests, Defendants have failed to demonstrate that the Court is permitted to award such costs.

Accordingly, for the reasons set forth above, the undersigned recommends that the assigned district judge award Plaintiff $2,041.00 in total costs—$400 for filing fees and $1,641 for service fees—and exercise its discretion under Rule 54(d) to decline to award Plaintiff costs for "Federal Express Delivery Service"; "Pacer – Online Research"; "Lexisnexis Risk Solutions GA Inc."; and the "Inside Document Production (60 Pages)."

## VI. INTEREST

Finally, Plaintiff requests post-judgment interest on the amount of damages.[12] (*See* Doc. 22 at 2.) This request has merit.

"It is settled that even in diversity cases '[p]ost-judgment interest is determined by federal law.'" *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988) (second alteration in original) (quoting *James B. Lansing Sound, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 801 F.2d 1560, 1570 (9th Cir. 1986)); *see, e.g., Lagstein v. Certain Underwriters*

---

[11] Plaintiff's "Inside Document Production" was not performed, for example, to create documents to be produced in discovery, since Defendants have not appeared in this case. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 929 (if a copy "was created to be produced in discovery, the cost of making the [copy] would be taxable under § 1920(4).")

[12] In its Supplemental Memorandum of Law in Further Support of its Renewed Motion for Default Judgment, Plaintiff states that it seeks to recover "contractual pre-judgment interest on the amounts due and owing under the Contracts." (*See* Doc. 34 at 4 n.4.) Plaintiff's Renewed Motion for Default Judgment, however, contains no such request for prejudgment interest, *see* Doc. 22 at 2 (requesting only "post-judgment interest at the applicable rate"), and its briefing does not include any argument in support of such an award of prejudgment interest under Nebraska law. *See, e.g.,* Neb. Rev. Stat. § 45–103.02 (authorizing prejudgment interest on unliquidated and liquidated claims). In the absence of any argument made by Plaintiff, the undersigned declines to consider the availability of prejudgment interest under Nebraska law. *See 2-Way Computing, Inc. v. Sprint Sols., Inc.*, No. 2:11-CV-12 JCM PAL, 2015 WL 794507, at *2 (D. Nev. Feb. 25, 2015) ("The court is not required anticipate all of a party's potential arguments and include those potential arguments in its analysis.") (citing *Genevier v. United States*, 357 Fed. Appx. 847 (9th Cir. 2008)).

*at Lloyd's of London*, 725 F.3d 1050, 1055 (9th Cir. 2013) ("In diversity cases . . . , the court looks to state law to determine the rate of prejudgment interest, while federal law determines the rate of post judgment interest." (citation omitted)).  Title 28 U.S.C. § 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  Under the plain language of Section 1961, "postjudgment interest on a district court judgment is mandatory." *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) (citation omitted).  Further, "[i]nterest accrues from the date of a judgment whether or not the judgment expressly includes it, because 'such interest follows as a legal incident from the statute providing for it.'" *Waggoner v. R. McGray, Inc.*, 743 F.2d 643, 644 (9th Cir. 1984) (quoting *Blair v. Durham*, 139 F.2d 260, 261 (6th Cir. 1943)).

"Post-judgment interest should be awarded on the entire amount of the judgment, including costs, *see, e.g.*, *Air Separation, Inc.*, 45 F.3d at 290 (citations omitted).  "Typically, post-judgment interest is awarded from the date of judgment until the judgment is satisfied." *Lagstein*, 725 F.3d at 1056; *see, e.g.*, 28 U.S.C. § 1961(a) (stating that post-judgment interest "shall be calculated from the date of the entry of the judgment").

Based on the foregoing, the undersigned recommends that the presiding district court judge award post-judgment interest to Plaintiff on the entire amount of the judgment, including damages and costs.

As to the rate of post-judgment interest, Section 1961(a) provides, in relevant part, that "[s]uch interest shall be calculated . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment."  "Thus, the appropriate rate for [post-judgment] interest should be determined by the Court based on the date of the entry of judgment." *Direct Connect Logistix, Inc. v. Road Kings Trucking Inc.*, Case No. 1:16-cv-01006-AWI-SKO, 2016 WL 6608924, at *8 n.1 (E.D. Cal. Nov. 9, 2016).

///

///

///

## VII. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that Plaintiff's Renewed Motion for Default Judgment (Doc. 22) be GRANTED IN PART and DENIED IN PART, as follows:

    (1)    Plaintiff's Renewed Motion for Default Judgment (Doc. 22) be GRANTED, insofar as Plaintiff requests that:

        a)    Judgment be entered in Plaintiff's favor and against Defendant CHD Transport Inc. d/b/a Singh Transportation and Defendant Balvinder Singh;

        b)    Plaintiff be awarded damages in the amount of $143,775.50 plus post-judgment interest; and

        c)    Plaintiff be awarded costs in the amount of $2,041.00.

    (2)    Plaintiff's Renewed Motion for Default Judgment be DENIED, insofar as Plaintiff requests that it be awarded attorney's fees.

These findings and recommendations are submitted to the district judge assigned to this action pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:  __November 14, 2017__          /s/ *Sheila K. Oberto*

                                          UNITED STATES MAGISTRATE JUDGE